Fenner v. Buffalo and State Line Railroad Company.

[MONROE GENERAL TERM, June 4, 1866. *Welles, E. Darwin Smith* and *Johnson,* Justices.]

---

## FENNER vs. THE BUFFALO AND STATE LINE RAILROAD COMPANY.

Goods destined for S., a place beyond Dunkirk, but directed to F. at Dunkirk, were transported by the defendant, upon its railroad, from Buffalo to Dunkirk. On the day of their arrival at the latter place, the goods were called for by the carrier who was to carry them from Dunkirk to S. The defendant, owing to other engagements of its agent, was not ready to make the delivery when called for; and it was mutually agreed, for the convenience of both parties, that the goods should remain in the defendant's warehouse, where they were, until the next morning. During the night, the warehouse took fire, by accident, and the goods were consumed.

*Held* that the liability of the defendant as a common carrier continued, until the property should be actually delivered to the next carrier.

APPEAL from a judgment entered upon the report of a referee. The action was brought against the defendant as a common carrier, to recover the value of goods which it had undertaken to transport from Buffalo upon its railroad, and deliver at Dunkirk, and which goods, as the plaintiff claimed, were, by the negligence and carelessness of the defendant, destroyed by fire, while in the defendant's care and custody, at Dunkirk.

Upon the trial it was proved that on the 15th day of May, 1861, at the city of New York, the plaintiff delivered certain household furniture, bedding and clothing, of the value of five hundred and forty-seven dollars and eighty-three cents, to a common carrier at the city of New York, marked as follows: "E. P. Fenner, Dunkirk, N. Y." That said

goods were delivered by such carrier, at the city of Buffalo, to the defendant, marked as aforesaid, and were by said defendant carried on its railroad from Buffalo to Dunkirk. That said goods were in fact in course of transportation to Sinclairville, Chautauqua county, New York, but that the defendant had no notice thereof, until they were called for by the carrier Austin, as hereinafter set forth. That they arrived at Dunkirk during the afternoon of the 24th of May, and were unloaded by the defendant from the cars, and properly stored within its freight house at that place, ready for delivery. The freight house was a substantial wooden building, as secure as wooden freight houses usually are. That during the latter part of the same afternoon one Alfred Austin, who was a teamster engaged in the business of carrying goods by team between Dunkirk aforesaid and Sinclairville, Chautauqua county, and who was authorized by the plaintiff to obtain said goods, called at the office of the defendant, at Dunkirk, with his team, and asked for said goods, and having ascertained that they had arrived, paid the freight thereon, being the sum of thirteen dollars and fifty-one cents, and signed a receipt therefor. That he then went to Richard Hays, the employee of the defendant, whose business it was to attend to the delivery of such goods, and found him engaged in the delivery of goods to other parties. That it was then nearly six o'clock, the hour at which said freight house was ordinarily closed; and the said Austin having occasion to be in Dunkirk the next morning for other goods, it was then and there arranged between him and Hays that Austin should not wait for the plaintiff's goods that night, but should call therefor in the morning. That thereupon said Austin went away. That during the ensuing night the freight house, in which said goods were stored, was accidentally destroyed by fire, which caught from an adjacent building, and said goods wholly consumed. That in the preservation of said goods, from the time the same were stored as aforesaid, the defendant used ordinary care and diligence. Upon motion of the

plaintiff's counsel, the complaint was amended, inserting after "Dunkirk aforesaid" the words "to be further conveyed from there to Sinclairville, their ultimate destination." And thereupon, the proofs being closed, the counsel for the defendant asked the referee to decide that the plaintiff was not entitled to recover in this action. The referee refused so to decide, and the defendant's counsel excepted. The referee found the above facts, substantially, and, as a conclusion of law, he found and decided that the defendant was liable as a common carrier, for the damages sustained by her in the loss of said goods; and that the plaintiff was entitled to judgment for $561.34, the value of said goods, including said freight moneys, together with interest and costs, and ordered judgment for the plaintiff, for that amount, from which judgmet the defendant appealed.

*Sherman S. Rogers,* for the appellant. I. When the respondent's goods arrived at Dunkirk, upon the appellant's cars, and were unloaded by the appellant and properly stored within its freight house at that place, ready for delivery, the relation of common carrier ceased, *eo instanti.* This doctrine is fully sustained by the following cases: *Thomas* v. *Boston and Prov. R. R. Co.,* 10 *Metc.* 477; *Norway Plains Co.* v. *Boston and Maine R. R.,* 1 *Gray,* 274; *McCarty* v. *New York and Erie R. R. Co.,* 30 *Penn. R.* 247; *Illinois Cent. R. R. Co.* v. *Alexander,* 20 *Ill. R.* 23; *Porter* v. *Chic. and Rock. Isl. R. R. Co., Id.* 407; *Richards* v. *Mich. Southern R. R. Co., Id.* 404; *Davis* v. *same, Id.* 412. The doctrine of these cases would seem also to have been fully approved by this court in *Goold* v. *Chapin,* (10 *Barb.* 612.) That case, it is true, has been overruled, but simply upon the ground that the floating barge, to which the goods were transferred by the first carrier, was not a warehouse. The correctness of the decision of the court upon the question decisive of the case now at bar was not impugned. (*See also the New Albany R. R. Co.* v. *Campbell,* 12 *Ind. Rep.* 55.)

II. It was not necessary that the consignee should give notice of the arrival. (*Norway Plains Co.* v. *Boston and Maine R. R.*, 1 *Gray*, 274, *and other cases above cited.*) But if such notice was necessary, it was given. Austin, the teamster, who was authorized by the plaintiff to call for the goods, had notice that they had arrived and were ready for delivery. He thereupon paid the freight and received the goods.

III. The respondent not only had notice, but a reasonable time had elapsed within which to obtain the delivery of the goods. There was no refusal to deliver them, but an amicable arrangement between Austin and the warehouseman Hays, that Hays "should not wait for the goods that night," but should call therefor in the morning. This agreement must be deemed to have terminated the relation of carrier, if it had not previously ended. It is unimportant that Austin was also a carrier, and was to take the goods to Sinclairville. The destination of the goods, so far as the appellant is concerned, was Dunkirk, and it is not to be treated as an intermediate carrier. The ground on which the referee decided the case is, therefore, clearly untenable.

IV. In any event, it must be held that if the appellant's character of carrier ceased upon the unloading of the goods and their deposit in its warehouse ready for delivery, it was not reinstated by what took place between Austin and the warehouseman.

V. The rule contended for in our first point is not only reasonable, but exceedingly simple and easy of application. 1. To require the giving of notice and the lapse of a reasonable time after the arrival of the goods, within which the consignee may obtain them, is to impose conditions which seem to be unreasonable, and in many instances difficult of performance. (As to notice, see 1 *Gray*, *supra*, 275.) And what is a reasonable time, will in each case be a disputed question, which must be settled by litigation. 2. To require notice without also saying that a reasonable time must elapse

within which the consignee may obtain his goods, is to insist upon a senseless formality—the sole object of notice being to give the consignee the information that his goods have arrived, and an opportunity to take them away. We submit that the questions in this case are open in cases of carriage by water. There is no authority here that the carrier is liable as *such* after delivery in suitable warehouse and *notice.* 3. This rule has also, as we have seen, received the approbation of three of the most important states of the Union. In these days of extended lines of railway passing through many states, it is exceedingly important that there be uniformity of decision on this subject. We submit, therefore, that the decisions from neighboring states, which we have cited, should have very great weight, and unless clearly wrong, or in conflict with the settled law of this state, should be followed.

*Cox & Avery,* for the respondent. I. The duty of common carriers is as well to *deliver* as to *carry,* and a failure in either respect renders them liable. (*Angell on Carriers,* §§ 281, 282, 287, *and many cases cited.* 2 *Kent's Com. 4th ed.* 604.) Now unless it can be maintained that *making this arrangement* with Austin was equivalent to a delivery, the defense can not be sustained. No agency was shown in Austin, or authority from us to make this arrangement. The parties *concerned* were: first, the plaintiff; second, the defendant. Where is the authority in *Austin* to make any *arrangement* with the defendants, to relieve them from liability to us in respect to this property?

II. Excuses, evasions or shiftings of responsibility by common carriers, in respect to goods in their custody, are not tolerated by our law. (*Angell,* §§ 796, 299. *Merritt* v. *Earle,* 29 *N. Y. Rep.* 117.) If the *arrangement* amounted to a shifting of responsibility as between *Austin* and the *defendants,* it yet did not absolve the defendants from their obligation to the *plaintiff.* The plaintiff is not a party to that "*arrangement.*" The defendants may, if they choose,

look to Austin for their indemnity ; but they can not require us to do so, for we have not agreed to.

III. The policy of this state, and the principles of our jurisprudence hold carriers responsible for goods *in transitu,* until they are actually in the custody of the next carrier. (10 *N. Y. Rep.* 431.   20 *id.* 364.   25 *id.* 364.   29 *id.* 117.) Should Austin by *"arrangement"* with the defendants assume the liability in respect to goods, as soon as they arrive, (on the defendant's railroad,) within twenty miles of Dunkirk, would such an arrangement affect the rights of owners, so as to absolve the defendant from responsibility as to losses occurring within the twenty miles ?   The answer of the plaintiff to this arrangement is still, *"Non in hœc fœdera veni."*   *The law* establishes the obligations of the carrier. No contract which he can make with *Austin* can change them. *"* This liability exists independently of the contract, having its foundation in the policy of the law ; and it is upon this legal obligation that he is charged as carrier, for the loss of property entrusted to him." (*Merritt* v. *Earle,* 29 *N. Y. Rep.* 122.)   Finally—To sanction and enforce the exemption desired in this case by the defendant, would go far to over-turn the established obligations of carriers, and destroy the public confidence in the laws of New York.

*By the Court,* JOHNSON, J.   The decision in *Gould* v. *Chapin and others,* (20 *N. Y. Rep.* 259,) is entirely decisive of this case.   In that case the Court of Appeals overruled the decision of this court, and held the carrier liable until the goods had been actually delivered to the next carrier.   The goods in that case had been held for a number of days for the next carrier, who had been repeatedly requested to come and take them, by the defendant.   This case, upon the facts, is by no means so strong for the carrier as that.   Here the goods were called for on the day of their arrival at Dunkirk, by the carrier, who was to transport them from that place to the place of their destination, and the freight and charges

paid. The defendant, owing to other engagements of its agent, was not ready to make the delivery when called for; and it was mutually agreed, for the convenience of both, as I understand the case, that the goods should remain and be delivered the next morning, as it was then nearly time for closing the storehouse in the evening. In such a case the liability of the carrier clearly continues, within all the cases in this state.

The judgment must be affirmed.

[Monroe General Term, June 4, 1866. *Welles, E. Darwin Smith* and *Johnson*, Justices.]